**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GEORGE MOORE, individually and on behalf of others similarly situated, | ) ) | Case No. 1:20-cv-05814 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CAPITAL HEALTH ADVISORS INC., | ) | |
| MARIO A. CALLEJAS, and AMERICAN | ) | **Jury Trial Demanded** |
| FINANCIAL SECURITY LIFE | ) | |
| INSURANCE COMPANY, | ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

1.      Defendant American Financial Security Life Insurance Company ("AFSLIC") engaged Capital Health Advisors Inc. ("Capital Health"), and insurance agent Mario A. Callejas ("Callejas"), to make nonconsensual prerecorded message telemarketing calls to sell its products and services.

2.      These calls violated the Telephone Consumer Protection Act's ("TCPA") bans on (a) telemarketing to phone numbers that are on the Do Not Call Registry, 47 C.F.R. §64.1200(c), and, (b) prerecorded message telemarketing, 47 U.S.C. § 227(b)(1)(B), and the Illinois Automatic Telephone Dialer Act's prohibitions against (c) prerecorded telemarketing, and (d) Caller ID spoofing during telemarketing calls, 815 ILCS 305/1 *et seq.*

3.      The telemarketing worked like this: AFSLIC hired Capital Health and its owner Callejas to make prerecorded phone calls in order to sell AFSLIC products and services.

4.      Capital Health and Callejas did what AFSLIC hired them to do, and made thousands of robocalls in order to try to sell AFSLIC products and services.

5.      Any reasonable person who received these calls would think that Capital Health

and Callejas were authorized by AFSLIC, because AFSLIC approved the telemarketing scripts used during calls that included reference to AFSLIC, provided Capital Health and Callejas detailed pricing information to convey to call recipients, authorized Capital Health and Callejas to consummate sales transactions during calls, such as in Exhibit A, and thereafter went on to provide the purchased products and services.

6.     Moreover, AFSLIC knew that Capital Health and Callejas were using illegal robocalls to advertise its products and services, and accepted business therefrom derived in spite of such knowledge.

### INTRODUCTION

7.     Advancements in telephone dialing technology by the 1980s and 90s made reaching a large number of consumers by telephone easier and more cost-effective.  However, this technology has also brought with it an onslaught of unsolicited robocalls, spam text messages, and junk faxes that intrude on individual privacy and waste consumer time and money.  As a result, the federal government and numerous states have enacted legislation to combat these widespread telecommunications abuses.  As Congress recognized:

> Many customers are outraged over the proliferation of intrusive, nuisance calls to
> their homes….  Banning such automated or prerecorded telephone calls to the
> home, except when the receiving party consents to receiving the call or when such
> calls are necessary in an emergency situation affecting the health and safety of the
> consumer, is the only effective means of protecting telephone consumers from
> this nuisance and privacy invasion.

Pub. L. No. 102-243, 105 Stat. 2394 § 2(6, 12) (1991).

8.     Relevant here, the TCPA prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service[.]"  47 U.S.C. § 227(b)(1)(A)(iii).  It similarly

prohibits "initiat[ing] any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party, unless the call: (i) Is made for emergency purposes; (ii) Is not made for a commercial purpose; (iii) Is made for a commercial purpose but does not include or introduce an advertisement or constitute telemarketing; (iv) Is made by or on behalf of a tax-exempt nonprofit organization; or (v) Delivers a 'health care' message made by, or on behalf of, a 'covered entity' or its 'business associate,' as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103." 47 C.F.R. § 64.1200(a)(3); *see also* 47 U.S.C. § 227(b)(1)(B). It also prohibits "initiat[ing] any telephone solicitation to ... [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

9.      The FCC—which develops the rules and regulations implementing the TCPA— has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."  *In re Rules & Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, at ¶ 13 (1995).

10.      The FCC has "repeatedly acknowledged the existence of vicarious liability under the TCPA." *Gomez v. Campbell-Ewald Co*., 768 F.3d 871, 878 (9th Cir. 2014) (citing *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574 (2013) ("*FCC 2013 Ruling*")). Principles of apparent authority and ratification may also provide a basis for vicarious seller liability for violations of Section 227(b). *See FCC 2013 Ruling*, 28 FCC Rcd. at 6590 n. 124.

11.      The TCPA provides for injunctive relief and the greater of actual damages or $500 per violation (or up to $500 in the case of do-not-call violations), which can be trebled

where the statute was "willfully or knowingly" violated.  47 U.S.C. § 227(b)(3), § 227(c)(5).

12.    Defendants caused multiple prerecorded-voice calls to be made to Plaintiff's residential and cellular phones without his consent and despite registration of his numbers on the National Do Not Call Registry, and Plaintiff files this class action complaint on behalf of himself and others similarly situated, seeking relief from Defendants' illegal calling practices.

## PARTIES

13.    Plaintiff George Moore is a natural person who resides in DuPage County, Illinois. He was in this District when he received the calls alleged herein.

14.    Defendant Capital Health Advisors Inc. is a Florida corporation headquartered at 4300 University Drive, Suite B204, Lauderhill, Florida 33351. Capital Health is a prerecorded message telemarketing company owned and operated by Callejas.

15.    Defendant Mario A. Callejas is a natural person who resides in Broward County, Florida. Callejas is a licensed insurance agent, who AFSLIC specifically authorized to market and sell its products and services through telemarketing.

16.    Defendant American Financial Security Life Insurance Company is a Missouri corporation with a principal place of business, on information and belief, at 55 NE 5th Avenue, Suite 502, Boca Raton, Florida 33432. AFSLIC has direct relationships with both Capital Health and Callejas, whereby Capital Health and Callejas conduct prerecorded telemarketing on its behalf.

## JURISDICTION AND VENUE

17.    This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 with respect to Plaintiff's TCPA claims. *Mims v. Arrow Financial Services, Inc.*, 132 S. Ct. 740 (2012).

18.     This Court has supplemental jurisdiction over Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367, because they are so related to Plaintiff's federal TCPA claims that they form part of the same case or controversy.

19.     Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges national classes, which will result in at least one class member belonging to a different state than that of any Defendant—for instance, Plaintiff is a citizen of Illinois, Callejas is a citizen of Florida, Capital Health is a Florida citizen by virtue of being incorporated there with a principal place of business in Lauderhill, Florida, and AFSLIC is a Missouri and Florida citizen by virtue of being incorporated in Missouri with a principal place of business in Boca Raton, Florida. Plaintiff seeks up to $1,500 in damages for each violation of the TCPA, which, when aggregated among three proposed classes each numbering in the thousands or more, exceeds the $5,000,000 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

20.     The Court has personal jurisdiction over Defendants and venue is appropriate in this District under 28 U.S.C. § 1391(a) because Defendants do business in this District, made the calls that are the subject of this lawsuit to Plaintiff and others in this District, solicited and made sales of insurance during the calls at issue in this District, and because a substantial portion of the events giving rise to this cause of action occurred in this District.

## FACTS

21.     Callejas and Capital Health have made numerous, prerecorded telemarketing calls to Plaintiff, in attempts to sell AFSLIC's products and services.

22.     All or most of these calls "spoofed" the caller ID to make it appear that the calls originated from someone other than Defendants, and to trick recipients into answering so Defendants' sales pitch could begin. Many of the caller IDs also falsely suggest to call recipients

that the calls were made "locally," again for the purpose of tricking recipients into answering.

23.     Spoofing also has the purpose and effect of lowering the probability that Defendants will get caught. This, coupled with the fact that Defendants' prerecorded messages do not identify the caller or seller, permits Defendants to make a shocking number of robocalls with relative impunity.

24.     Thus – by design, in order to attempt to evade TCPA liability – only consumers who indicate an interest when presented with the prerecorded message are told who made the calls, and what is being sold.

25.     Defendants tried to give the *outward appearance* of general TCPA compliance, but in practice, they intentionally address ongoing issues concerning telemarketing violations largely through verbal communications and misdirection, designed to allow them to continue reaping the benefits of illegal telemarketing with legal impunity.

26.     Capital Health and Callejas made calls to offer AFSLIC's products and services to three of Plaintiff's phone numbers, all of which are on the National Do Not Call Registry: (1) a Google Voice VoIP residential number, (2) an Ooma VoIP residential number, and (3) a personal cellular telephone number.

27.     Plaintiff attempted to log the calls he received, broken down below by phone line:

    a.  Google Voice VoIP: from (727) 753-6956 on February 25, 2020, from (727) 753-9864 on April 24, 2020, from (727) 753-6211 on May 27, 2020, and from (727) 753-1626 on June 2, 2020;

    b.  Ooma VoIP number from (630) 516-1020 on January 29, 2020, from (630) 515-9430 on February 1, 2020, from (630) 513-5040 on February 6, 2020, from (630) 516-1690 on February 12, 2020, from (630) 516-1790 on March 4, 2020, from

(630) 511-4420 on March 16, 2020, from (630) 516-2610 on March 17, 2020, from (630) 511-8880 on April 24, 2020, from (630) 515-9690 on April 29, 2020, from (630) 516-1310 on May 28, 2020, from (630) 516-2280 on June 4, 2020, and from (630) 518-9840 on August 28, 2020; and

c. Cellular telephone number from (630) 699-3692 on January 16, 2020, from (630) 699-5657 on January 30, 2020, from (630) 699-8412 on June 10, 2020, from (630) 699-6600 on June 16, 2020, from (630) 699-4244 on July 10, 2020, from (630) 699-1941 on August 24, 2020, and from (630) 699-4477 on August 27, 2020.

28.     The calls each played the same or similar prerecorded-voice message at the beginning of the call, which instruct the recipient to "press 1" to speak with a representative:

Hello. Can't afford your health insurance or high deductibles? Do you have preexisting conditions? With our open enrollment PPO plan, you are covered from day one, and receive coverage for unlimited doctor's visits, emergency room, hospitalization, surgery, dental, prescription, and more, with no deductibles. To hear more about our plan, please press one. Otherwise press two to be placed on the do-not-call list.

29.     In order to confirm the identity of the company calling him, Plaintiff attempted to engage with Defendants in some calls. For example, on May 27, 2020, Plaintiff received a call from (727) 753-6211 on his Google Voice VoIP number, which played the above or similar prerecorded message.

30.     After Plaintiff pressed "1" on his phone, he was connected with a representative, "Andre", who proceeded to screen Plaintiff for interest, gather Plaintiff's information and try to sell Plaintiff health insurance.

31.     After Plaintiff answered a few questions, he was transferred to a second representative, "Karla," who continued to try to sell him AFSLIC health insurance.

32.     Karla provided Plaintiff with callback number (866) 597-5154 ext. 0019 for herself, and ext. 0032 for her supervisor Emily Lopez.

33.     Capital Health uses (866) 597-5154 in its registrations with various states' departments of insurance. *See, e.g.,*

https://apps.doi.idaho.gov/licensing/search?&Id=191740&Lic=737771&Type=AGY.

34.     While on the phone, Karla pitched, and Plaintiff purchased, an AFSLIC "Health Choice+" group limited indemnity health insurance plan with accidental death and dismemberment coverage, for a total cost of $372.50 for the first month.

35.     Defendants charged $372.50 on Plaintiff's credit card. Each Defendant took some of this fee, even though they knew the business was generated through illegal prerecorded telemarketing. Additionally or alternatively, each Defendant was entitled to future monies as a result of the sale.

36.     Plaintiff purchased the insurance under the pseudonym "Jeremy Moore." The receipt Defendants provided to Plaintiff on their member portal reflects Capital Health as the "agent."

37.     On June 1, 2020, Plaintiff called Capital Health customer service to inquire as to the identity of the agent who sold him the insurance policy. The person who answered his call told him that the only insurance agent it had on file for Plaintiff was Callejas.

38.     On June 4, 2020, Plaintiff sent an email to Capital Health informing them that he no longer wished to be contacted, and instructing them to cancel the insurance policy prior to its effective date.

39.     Remarkably, in spite of that communication, Plaintiff received another telemarketing call from Capital Health on August 28, 2020, with the same prerecorded message

as the previous calls and to the same phone number he had asked them to stop calling.

40. Defendants' calls, including those to Plaintiff, were made to residential phone numbers that had been registered with the National Do Not Call Registry for more than 31 days prior to receipt of the calls.

41. Defendant AFSLIC did not have written do-not-call policies or procedures at the time of the calls to Plaintiff.

42. AFSLIC maintained the power and right of interim control over Callejas' and Capital Health's actions with respect to the telemarketing complained of herein. It directed the geographic areas to target with calls, the times for calling, scripts used, whether and how an artificial or prerecorded voice could be used during the calling, provided individualized pricing and quotes that were offered during the calls, approved the marketing language (including the use of AFSLIC's tradename) and approved the sale of its products and services during each individual call—all of which AFSLIC exercised via communications with its co-Defendants on a routine basis.

43. Plaintiff and other class members reasonably believed AFSLIC's co-Defendants had its authority for the calls at issue, based on AFSLIC's own actions—including through it directly permitting Callejas and Capital Health to use its tradenames during such calls, compensating them for business derived from such calls, permitting them access to detailed, proprietary pricing and product information for use in such calls, explicitly authorizing them to issue quotes and bind AFSLIC through sales derived through such calls, and retaining revenue and providing the goods and services purchased as a result of such.

44. AFSLIC knew that Callejas and Capital Health were telemarketing on its behalf using a prerecorded voice irrespective of the called party's consent or National Do Not Call

Registry status in violation of the TCPA, and did nothing to prevent or stop the calling at issue. Instead of repudiating the calls and business derived therefrom, AFSLIC knowingly continued to enjoy the benefits of the marketing, including accepting new customers like Plaintiff.

45.     AFSLIC has been sued multiple times before for substantially identical TCPA violations, but continues to engage in the conduct complained of herein.

46.     AFSLIC's actions and omissions with regard to the telemarketing complained of herein justify a reasonable assumption that it consented to the telemarketing at issue.

47.     AFSLIC knowingly accepted business that originated through the nonconsensual telemarketing at issue, compensating Callejas and Capital Health for such, and thereafter provided the products and services purchased through the calling and retained revenue from such, thus ratifying it.

48.     Alternatively, to the extent that AFSLIC lacked full knowledge about every aspect of Callejas' and Capital Health's telemarketing, it failed to investigate further despite knowledge that would have caused a reasonable person to do so. For instance, AFSLIC was aware that Callejas had been sued previously for violating the TCPA, *e.g., Karon v. Apex Healthcare Advisors, Inc.*, No. 1:18-cv-00999 (N.D. Ohio filed May 1, 2018), and received numerous complaints about nonconsensual telemarketing by its co-Defendants or other third-party lead generators, but nonetheless failed to investigate or correct its deficient policies, practices, and procedures that resulted in the illegal calling at issue.

49.     Defendants' violations were negligent. Alternatively, they were willful and knowing.

50.     Callejas was previously sued for prerecorded telemarketing TCPA violations in *Karon v. Apex Healthcare Advisors, Inc.*, No. 1:18-cv-00999 (N.D. Ohio filed May 1, 2018).

Callejas settled that case in August 2018, yet continued to willfully engage in nonconsensual, prerecorded telemarketing to Plaintiff and others.

51.     Plaintiff and the classes have been damaged by these calls. Their privacy was improperly invaded, Defendants' calls temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from other activities to address the calls. Defendants' calls were annoying and a nuisance, and wasted the time of Plaintiff and the classes. *See, e.g., Mims v. Arrow Fin. Servs., Inc.*, 132 S. Ct. 740 (Jan. 18, 2012) (discussing congressional findings of consumer "outrage" as to autodialed and prerecorded calls).

**CLASS ACTION ALLEGATIONS**

52.     Plaintiff brings this action under Federal Rules of Civil Procedure 23(b)(2) and (b)(3), on behalf of a class consisting of:

> **Prerecord Class:** All persons in the United States whose residential telephone number Defendants or some party on their behalf called using an artificial or prerecorded voice that did not identify the seller's identity, for the purpose of encouraging the purchase of insurance, where such calling was made to a person for whom Defendants did not first obtain a signed writing expressly authorizing such calls.
>
> > **Illinois Subclass**: Plaintiff alleges a subclass for the Prerecord Class, comprised of Illinois residents who received such calls, and/or for whom the caller ID on such calls was adulterated.
>
> **National DNC Class:** All non-customers[1] of Defendants within the United States to whom Defendants or someone on their behalf initiated more than one call for the purpose of encouraging the purchase of insurance within any 12-month period, despite the residential phone number having been registered on the National Do Not Call Registry for more than 31 days, where Defendants lack any signed, written agreement with the consumer stating that he or she agrees to be contacted by them at the phone number.
>
> **Internal DNC Class:** All persons within the United States to whom Defendants or someone on their behalf initiated more than one call for the purpose of encouraging the purchase of goods or services within any 12-month period, where

---

[1] The limitation on "non-customers" refers to the persons' status at the time of the call. The class includes people who were not customers at the time of calls, and subsequently became customers.

- 11 -

at least one call came after a request to stop calling.

53.     Upon information and belief, there have been more than 1,000 persons in each class, including whose residential phone number Defendants or a third-party on their behalf repeatedly called to solicit insurance using a prerecorded voice, despite the number having been registered with the National Do Not Call Registry and Defendants lacking any consent to make such calls.

54.     Common questions of law or fact exist as to all members of the classes, which predominate over any questions solely affecting any individual member, including Plaintiff. Such questions common to the class include but are not limited to:

> a.  Whether the calls to Plaintiff and the Prerecord Class were made using an artificial or prerecorded voice as such terms are defined or understood under the TCPA and applicable FCC regulations and orders;
>
> b.  Whether Defendants had prior express written consent to call the phone numbers of Plaintiff and the other members of the Prerecord Class;
>
> c.  Whether Defendants had "prior express invitation or permission" under the TCPA to call the phone numbers of Plaintiff and the National DNC Class;
>
> d.  Whether Defendants had established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA's do-not-call regulations; and
>
> e.  Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other members of the class are entitled to treble damages under 47 U.S.C. § 227(b)(3) or § 227(c)(5).

55.     Plaintiff's claims are typical of the claims of the other members of the classes.

The factual and legal bases of Defendants' liability to Plaintiff and the other members of the class are the same: They violated the TCPA by causing prerecorded telemarketing calls to be made to the telephone number of each member of the Prerecord Class without consent, similarly initiated unsolicited telephone solicitations to each member of the National DNC Class despite their number's registration with the National Do Not Call Registry, called members of the Internal DNC Class despite inadequate policies, and made non-consensual autodialed, prerecorded telemarketing calls using spoofed numbers to the Illinois Subclass.

56.     Plaintiff will fairly and adequately protect the interests of the classes. Plaintiff has no interests that might conflict with the interests of the classes. Plaintiff is interested in pursuing his claims vigorously, and he has retained counsel competent and experienced in class and complex litigation, including with regards to the claims alleged herein.

57.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual action would entail. There are, on information and belief, thousands of members of each class, such that joinder of all members is impracticable.

58.     No difficulties are likely to be encountered in the management of this action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

59.     Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other members of the classes, thereby making relief appropriate with respect to the class as a whole. Prosecution of separate actions by individual members of the classes,

should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the classes that would establish incompatible standards of conduct.

60.     The identity of the classes is, on information and belief, readily identifiable from Defendants' records.

## COUNT I
**Violations of the Prerecorded Message Provisions of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Prerecord Class)**

61.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

62.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service…." 47 U.S.C. § 227(b)(1)(A)(iii). It is likewise a violation of the TCPA to "[i]nitiate any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party, unless the call: (i) Is made for emergency purposes; (ii) Is not made for a commercial purpose; (iii) Is made for a commercial purpose but does not include or introduce an advertisement or constitute telemarketing; (iv) Is made by or on behalf of a tax-exempt nonprofit organization; or (v) Delivers a 'health care' message made by, or on behalf of, a 'covered entity' or its 'business associate,' as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103." 47 C.F.R. § 64.1200(a)(3).

63.     Defendants initiated or caused to be initiated calls to the residential telephone numbers of Plaintiff and the other members of the Prerecord Class using an artificial or

prerecorded voice.

64.     Defendants' calls to the Prerecord Class were made for non-emergency, commercial purposes for the purpose of encouraging the purchase of insurance, and thus constituted telemarketing.

65.     These calls were made without regard to whether or not Defendants had previously obtained express permission or consent from the called party to make such calls.  In fact, Defendants did not have prior express consent (written or otherwise) to call the phone numbers of Plaintiff and the other members of the Prerecord Class when the calls were made.

66.     These violations were willful or knowing.

67.     As a result of Defendants' conduct and pursuant to Section 227(b)(3) of the TCPA, Plaintiff and the other members of the Prerecord Class were harmed and are each entitled to a minimum of $500 in damages for each violation.  Plaintiff and the Prerecord Class are also entitled to an injunction against future calls.  47 U.S.C. § 227(b)(3).

68.     Because Defendants knew or should have known that Plaintiff and the other members of the Prerecord Class had not given prior express consent to receive its prerecorded-voice telemarketing calls to their phones—and/or willfully caused such calls to be made to the phones of Plaintiff and the other members of the Prerecord Class without prior express consent—the Court should treble the amount of statutory damages available to Plaintiff and the other members of the Prerecord Class, pursuant to Section 227(b)(3) of the TCPA.

69.     To the extent AFSLIC or another Defendant did not physically make the calls at issue itself, it is nonetheless vicariously liable based on theories of actual authority, apparent authority, and ratification, for these calls were made on its behalf.

WHEREFORE, Plaintiff George Moore, individually and on behalf of the Prerecord Class, respectfully requests that the Court enter judgment against Defendants for:

A.     Certification of the Prerecord Class as alleged herein;

B.     Damages, pursuant to 47 U.S.C. § 227(b)(3);

C.     Injunctive relief, pursuant to 47 U.S.C. § 227(b)(3), aimed at preventing Defendants from violating the TCPA in the future, including:

1. Requiring Defendants to establish and implement do-not-call policies;

2. Requiring Defendants to hire a Court-approved, independent auditing company to (a) investigate all allegations of TCPA violations, and (b) audit no less than 10% of Defendants' telemarketing calls to ensure that Defendants had consent and that the consumer had not previously asked that calls stop, and (c) report the results of the above investigations to the Court and Plaintiff's counsel on a quarterly basis; and

3. Requiring Defendants to include an automated IVR opt-out mechanism at the beginning of any and all prerecorded-voice calls, for which opt-outs are actually honored;

D.     Attorneys' fees and costs, as permitted by law; and

E.     Such other or further relief as the Court deems just and proper.

**<u>COUNT II</u>**
**Violations of the <u>Do Not Call Registry</u> provisions of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the National DNC Class)**

70.     Plaintiff re-alleges and incorporates all prior paragraphs.

71. It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

72. Defendants violated the TCPA by initiating multiple telephone solicitations to Plaintiff and the other members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

73. These violations were willful or knowing.

74. As a result of Defendants' violations of the TCPA's national do-not-call rule, Plaintiff and the other members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

75. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

76. To the extent AFSLIC or another Defendant did not physically "initiate" the calling at issue itself, it is nonetheless vicariously liable based on theories of actual authority, apparent authority, and ratification, for these calls were made on its behalf.

WHEREFORE, Plaintiff George Moore, individually and on behalf of the National DNC Class, respectfully requests that the Court enter judgment against Defendants for:

    A.    Certification of the National DNC Class as alleged herein;

    B.    Damages, pursuant to 47 U.S.C. § 227(c)(5);

    F.    Injunctive relief, pursuant to 47 U.S.C. § 227(c)(5), aimed at preventing Defendants from violating the TCPA in the future, including:

        4.    Requiring Defendants to establish and implement do-not-call policies;

5. Requiring Defendants to hire a Court-approved, independent auditing company to (a) investigate all allegations of TCPA violations, and (b) audit no less than 10% of Defendants' telemarketing calls to ensure that Defendants had consent and that the consumer had not previously asked that calls stop, and (c) report the results of the above investigations to the Court and Plaintiff's counsel on a quarterly basis; and

6. Requiring Defendants to include an automated IVR opt-out mechanism at the beginning of any and all prerecorded-voice calls, for which opt-outs are actually honored;

C. Attorneys' fees and costs, as permitted by law; and

D. Such other or further relief as the Court deems just and proper.

### COUNT III
**Violations of the <u>Internal Do Not Call</u> provisions of the TCPA, 47 U.S.C. § 227
(On Behalf of Plaintiff and the Internal DNC Class)**

77. Plaintiff re-alleges and incorporates all prior Paragraphs.

78. Telemarketers and sellers are required to honor consumer requests not to receive telemarketing calls. 47 C.F.R. §64.1200(d).

79. Defendants violated the TCPA by continuing to call Plaintiff and the class, even after they made requests not to receive telemarketing.

80. It is a violation of the TCPA to initiate any telemarketing call to a residential telephone subscriber that does not provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the calls were being made, and a telephone number or address at which the person or entity may be contacted. 47 C.F.R. 64.1200(d)(4).

81.     Most of the calls Plaintiff received failed to identify the caller, and failed to identify the person on whose behalf the calls were made.

82.     Additionally, Defendants' spoofing of the caller ID as described herein, prevented Plaintiff and others from receiving a true phone number or address at which the telemarketer or seller could be contacted. This was exacerbated by Defendants' practice of screening customers and waiting until the last possible instant to reveal the true identities of the entities and persons behind the calls.

83.     A primary reason that Defendants violated 47 C.F.R. § 64.1200(d), is that they do not have a Do Not Call policy that complies with the TCPA, and because they do not adhere to any compliant policies they might have.

84.     These violations were willful or knowing.

85.     As a result of Defendants' violations of the TCPA's internal do-not-call rules, Plaintiff and the other members of the Internal DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

86.     Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

87.     To the extent AFSLIC or another Defendant did not physically "initiate" the calling at issue itself, it is nonetheless vicariously liable based on theories of actual authority, apparent authority, and ratification, for these calls were made on its behalf.

WHEREFORE, Plaintiff George Moore, individually and on behalf of the Internal DNC Class, respectfully requests that the Court enter judgment against Defendants for:

E.     Certification of the Internal DNC Class as alleged herein;

F.     Damages, pursuant to 47 U.S.C. § 227(c)(5);

G.      Injunctive relief, pursuant to 47 U.S.C. § 227(c)(5), aimed at preventing Defendants from violating the TCPA in the future, including:

    1.      Requiring Defendants to establish and implement do-not-call policies;

    2.      Requiring Defendants to hire a Court-approved, independent auditing company to (a) investigate all allegations of TCPA violations, and (b) audit no less than 10% of Defendants' telemarketing calls to ensure that they are identified during the beginning of each call; and

    3.      Requiring Defendants to include an automated IVR opt-out mechanism at the beginning of any and all prerecorded-voice calls, for which opt-outs are actually honored;

G.      Attorneys' fees and costs, as permitted by law; and

H.      Such other or further relief as the Court deems just and proper.

## COUNT IV
### Prerecorded Message Violations of the ATDA, 815 ILCS 305/1 *et seq.*
### (On Behalf of Plaintiff and the Illinois Subclass)

88.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

89.     The ATDA prohibits "play[ing] a prerecorded message placed by an autodialer without the consent of the called party." 815 ILCS 305/30(b).

90.     Under the ATDA, an "autodialer" or "autodialer system" is defined as "any telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers which is programmed to sequentially or randomly access the stored telephone numbers

- 20 -

in order to automatically connect a telephone with a recorded message[.]" 815 ILCS 305/5(a).[2]

91.     A "recorded message" refers to "any taped communication soliciting the sale of goods or services without live voice interaction." 815 ILCS 305/5(c).

92.     Defendants did not have the consent of Plaintiff or the other members of the Illinois Subclass to play a prerecorded message placed by an autodialer.

93.     Nonetheless, Defendants caused calls to be made to the phones of Plaintiff and the other members of the Illinois Subclass using a telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message. No human being physically dialed each digit of Plaintiff's or the other Illinois Subclass members' phone numbers to connect their telephones with a recorded message.

94.     Defendants' prerecorded messages to the phones of Plaintiff and the other Illinois Subclass members included language soliciting the sale of goods or services without live voice interaction, including offering insurance or medical discount-related products.

95.     Consequently, Defendants violated the ATDA by playing a prerecorded message placed by an autodialer during calls to the phones of Plaintiff and the other Illinois Subclass members, without such persons' consent.

96.     As a result of Defendants' conduct and pursuant to Section 30(c)-(c-5) of the ATDA, Plaintiff and the other members of the Illinois Subclass were harmed and are each entitled to statutory damages of $500 per violation and three times any actual damages, as well as costs and attorneys' fees. 815 ILCS 305/30(c)-(c-5).

WHEREFORE, Plaintiff, individually and on behalf of the Illinois Subclass, respectfully

---

[2]     The term "autodialer" or "autodialer system" does not include "device[s] associated with a burglar alarm system, voice message system or fire alarm system." 815 ILCS 305/5(a).

requests that the Court enter judgment against Defendants for:

A. Damages, pursuant to 815 ILCS 305/30;

B. Attorneys' fees and costs, as permitted by law; and

C. Such other or further relief as the Court deems just and proper.

## COUNT V
### Caller ID Spoofing Violations of the ATDA, 815 ILCS 305/1 *et seq.*
### (On Behalf of Plaintiff and the Illinois Subclass)

97.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

98.     The ATDA prohibits "mak[ing] or caus[ing] to be made telephone calls utilizing an autodialer in a manner that does not comply with Section 15." 815 ILCS 305/30(a).

99.     Section 15 of the ATDA, in turn, provides that "[a]n autodialer may not be operated in a manner that impedes the function of any caller ID when the telephone solicitor's service or equipment is capable of allowing the display of the solicitor's telephone number." 815 ILCS 305/15(d).

100.    Under the ATDA, an "autodialer" or "autodialer system" is defined as "any telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message[.]" 815 ILCS 305/5(a). A "recorded message" refers to "any taped communication soliciting the sale of goods or services without live voice interaction." 815 ILCS 305/5(c).

101.    Defendants caused a prerecorded message soliciting the sale of insurance and health related goods and services to the phones of Plaintiff and the other members of the Illinois Subclass.

102.    Specifically, Defendants' calls to Plaintiff and the other Illinois Subclass members were made by a telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers, which was programmed to sequentially or randomly access Plaintiff's and the other Illinois Subclass members' stored telephone numbers in order to automatically connect their telephones with a recorded message soliciting the sale of goods or services without live voice interaction.

103.    While, on information and belief, the service or equipment used to make such calls was capable of allowing the display of its telephone number, Defendants or their vendor(s) impeded caller identification by using spoofed numbers during the calls to Plaintiff and the other members of the Illinois Subclass.

104.    As a result of Defendant's conduct and pursuant to Section 30(c)-(c-5) of the ATDA, Plaintiff and the other members of the Illinois Subclass were harmed and are each entitled to statutory damages of $500 per violation and three times any actual damages, as well as costs and attorneys' fees. 815 ILCS 305/30(c)-(c-5).

WHEREFORE, Plaintiff, individually and on behalf of the Illinois Subclass, respectfully requests that the Court enter judgment against Defendants for:

A.    Damages, pursuant to 815 ILCS 305/30;

B.    Attorneys' fees and costs, as permitted by law; and

C.    Such other or further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: September 30, 2020

GEORGE MOORE, individually and
on behalf of others similarly situated

By: _/s/ Alexander H. Burke_

Alexander H. Burke
Daniel J. Marovitch
Burke Law Offices, LLC
909 Davis St., Suite 500
Evanston, IL 60201
Telephone: (312) 729-5288
aburke@burkelawllc.com
dmarovitch@burkelawllc.com

*Counsel for Plaintiff*

### Document Preservation Demand

Plaintiff hereby demands that Defendants take affirmative steps to preserve all recordings, data, databases, call records, consent to receive autodialed or artificial or prerecorded voice calls, e-mails, recordings, documents, and all other tangible things that relate to the allegations herein, Plaintiff, or the putative class members, or the making of telephone calls, the events described herein, any third party associated with any telephone call, campaign, account, sale, or file associated with Plaintiffs or the putative class members, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim. If Defendants are aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendants request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of Defendants.

_/s/ Alexander H. Burke_